CIVIL MINUTES—GENERAL

Case No.  CV 19-1460-MWF (SSx)              Date:  July 18, 2019
Title:    Daniel Kissick v. American Residential Services, LLC

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**    ORDER RE: MOTION TO DISMISS OR IN THE ALTERNATIVE, TRANSFER VENUE TO THE WESTERN DISTRICT OF TENNESSEE, OR IN FURTHER ALTERNATIVE, MOTION TO DISMISS ALLEGATIONS OF NON-CALIFORNIA PUTATIVE CLASS MEMBERS [14]

Before the Court is Defendant American Residential Services, LLC's ("ARS") Motion to Dismiss or in the Alternative, Transfer Venue to the Western District of Tennessee, or in Further Alternative, Motion to Dismiss Allegations of Non-California Putative Class Members (the "Motion"), filed on May 10, 2019. (Docket No. 14). Plaintiff Daniel Kissick filed an Opposition on June 17, 2019. (Docket No. 22). ARS filed a Reply on June 1, 2019. (Docket No. 23). The Court has read and considered the papers on the Motion, and held a hearing on July 15, 2019.

For the reasons discussed below, the Motion is **GRANTED** *in part* and **DENIED** *in part* as follows:

- **GRANTED** *in part* as to the request to transfer the action to the United States District Court for the Western District of Tennessee. ARS has established that transferring this action to Tennessee will be more convenient for the parties and witnesses, promote greater efficiency, reduce overall litigation costs, and better serve the interests of justice.

- The Motion is otherwise **DENIED** *without prejudice* for refiling as a motion to dismiss in the Western District of Tennessee.

I.   **BACKGROUND**

On February 27, 2019, Plaintiff commenced this putative class action against ARS.  (*See generally* Complaint (Docket No. 1)).  Plaintiff's operative Complaint contains the following relevant, but few, allegations:

Plaintiff is a resident of Whittier, California.  (*Id.* ¶ 1).  ARS is a Delaware corporation with its principal place of business in Memphis, Tennessee.  (*Id.* ¶ 2).

On December 14, 2018, Plaintiff received a call from the telephone number (615) 239-0855.  (*Id.* ¶ 10).  When he answered the call, "he heard a momentary pause."  (*Id.* ¶ 12).  It is unclear whether he actually heard anything else after the momentary pause or spoke to anyone.  He called the phone number back, and "a recording plays a message starting: 'Thank you for calling ARS Rescue Rooter.'"  (*Id.* ¶ 11).

Plaintiff alleges that the call and recording he heard are "hallmark[s] of a predictive dialer," in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (*Id.* ¶¶ 12–13).  He also alleges that ARS made the call without his prior express written consent.  (*Id.* ¶ 14).

As a result of this call, Plaintiff asserts two claims for relief, for violations and "knowing and/or willful violations" of the TCPA, on behalf of himself and a putative nationwide class of individuals who received a similar call from ARS.  (*Id.* ¶¶ 15–41).

II.  **LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  However, a motion to transfer should not merely shift the inconvenience from the moving party to the opposing party.  *See*

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (affirming the denial of a transfer because the transfer "would merely shift rather than eliminate the inconvenience").

"The burden is on the moving party to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice." *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009); *see also Commodity Futures Trading Comm. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555–56 (N.D. Cal. 1988) ("In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to justify the necessity of the transfer. The plaintiff's choice of forum should not be easily overturned"). The threshold question under section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought." *Roling v. E*Trade Secs., LLC*, 756 F. Supp. 2d 1179, 1184 (N.D. Cal. 2010).

"If venue would be appropriate in the would-be transferee court, then the court must make an individualized, case-by-case consideration of convenience and fairness." *Roling*, 756 F. Supp. 2d at 1184. As part of this analysis, the Court may consider a number of factors, including but not limited to (1) the location where the relevant agreements were negotiated and took place; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

### III.  DISCUSSION

As a threshold matter, the Court must determine whether the action could have been brought in the Western District of Tennessee. *See Roling*, 756 F. Supp. 2d at 1184. The parties do not dispute that the action could have been brought there, and the

Court agrees that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if Plaintiff originally had filed the action in the Western District of Tennessee.  (*See* Mot. 9; Opp. at 7 n.2).

Next, proceeding through the factors of the transfer analysis, the Court concludes that the Motion should be granted:

***Plaintiff's choice of forum.***  Plaintiff obviously chose to file the current action in this District.  "The most important consideration [in analyzing whether transfer promotes the interests of justice] is whether the plaintiff's chosen forum, which is generally given substantial weight, should be disregarded."  *Stock v. Xerox Corp.*, No. 15-cv-1747-MWF (KESx), 2016 WL 5867436, at *4 (C.D. Cal. Apr. 13, 2016).  "[P]laintiff's choice of forum should not be easily overturned."  *STX, Inc.*, 708 F. Supp. at 1555–56.

However, a district court accords "minimal consideration" to a plaintiff's choice of forum in representative actions, even when the plaintiff chooses his or her home forum.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (concluding that "the named plaintiff's choice of forum is given less weight" and that "the district court did not abuse its discretion in deciding to transfer this action pursuant to [§ 1404(a)]"); 15 Charles Alan Wright, et al., *Fed. Prac. & Proc.* § 3848 (4th ed. 2017) ("[C]ourts have held that the factor is entitled to little weight in shareholder derivative litigation and in class actions.").  Plaintiff acknowledges this rule.  (*See* Opp. at 8).

Moreover, deference to a plaintiff's choice of forum "is diminished if the moving party establishes" that "the operative facts have not occurred within the forum", "the forum has no particular interest in the parties or subject matter", the forum is not the primary residence of either party, or the subject of the litigation is not substantially connected to the forum.  *Stock*, 2016 WL 5867436, at *4 (quoting *Catch Curve, Inc. v. Venali, Inc.*, No. 05-CV-4820-DDP (AJWx), 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27, 2006)).

Here, although Plaintiff resides in California, ARS is a Delaware corporation with its principal place of business in Tennessee.  (Compl. ¶¶ 1–2).  ARS argues that

Plaintiff's choice of a California forum "deserves little (if any) weight in the analysis" because the operative facts giving rise to his TCPA claims occurred in Tennessee. (Mot. at 12). ARS points out, for instance, that "the ARS employee responsible for overseeing ARS's marketing operations works out of ARS's corporate offices in Memphis" and that same employee is "assisted by approximately fifteen other ARS employees who also work in Memphis." (*Id.* (citing Declaration of Neal Zamore ("Zamore. Decl.") ¶ 4 (Docket No. 14-1)). ARS also notes that the decisions about national marketing, "including what types of consumers may be called," are made by ARS employees and executives in Memphis. (*Id.* (citing Zamore Decl. ¶¶ 5–6)).

The Court is persuaded by ARS's argument, as the Complaint does not allege that any other operative facts occurred in California apart from Plaintiff's receipt of the telephone call. (*See* Opp. at 9). Contrary to Plaintiff's contention that the only operative facts are that he "resides in this District and received the call(s) at issue in this District," this action will necessarily involve numerous other operative facts about ARS's business practices and decisions behind the call that was alleged to be in violation of the TCPA, whether an automated dialer was used, etc. (*Id.*).

It is not readily apparent that other operative facts occurred in California. *See, e.g.*, *Rabinowitz v. Samsung Elec. Am, Inc.*, No. 14-CV-801-JCS, 2014 WL 5422576, at *4 (N.D. Cal. Oct. 10, 2014) (affording the plaintiff's choice of forum "minimal deference," concluding that there are no allegations that "relevant facts occurred in this district . . . [and] that Samsung's marketing decisions emanated from the District of New Jersey," and transferring action to New Jersey pursuant to § 1404). Neither is it readily apparent that this forum has a special interest in this litigation apart from efficiently and fairly resolving the dispute between the parties.

Accordingly, the Court accords minimal weight to Plaintiff's choice of forum.

***Convenience of the parties.***  As discussed above, ARS has its principal place of business in Tennessee and Plaintiff is a California resident. ARS argues that it would be more convenient for it to litigate in Tennessee and "any resulting inconvenience Plaintiff may claim to suffer would be negligible." (Mot. at 12–13). ARS explains

that, among other things, "Plaintiff will not be required to appear at most hearings, and ARS's attorneys are willing travel to California to depose Plaintiff." (Reply at 12).

In response, Plaintiff contends that "litigating this case in Tennessee is obviously inconvenient for [him]" and "he should not have to travel across the country to seek redress." (Opp. at 9). As a result, Plaintiff argues that transferring this action merely shifts the inconvenience from ARS to Plaintiff, rather than "result[ing] in an aggregate benefit to all." (*Id.*).

The Court agrees with Plaintiff that the transfer should not simply shift the inconvenience from ARS to Plaintiff. *See Decker Coal Co.*, 805 F.2d at 843 (noting that a motion to transfer should not merely shift the inconvenience from the moving party to the opposing party). But the Court also notes that there is no indication that ARS has any substantial connection to California and, as noted above, many of the operative facts underlying Plaintiff's alleged TCPA violations occurred in Tennessee. *See Reflex Media, Inc. v. Doe No. 1*, No. 18-cv-5018-PJH, 2018 WL 6728010, at *2 (N.D. Cal. Dec. 21, 2018) (noting that the convenience of the parties factor weighs in favor of transfer because "plaintiff does not allege that any party has any relevant contact with California and plaintiff's causes of action's relation to this forum is, at best, tenuous").

Accordingly, this factor is neutral.

***Convenience of the witnesses and availability of compulsory process.*** "The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). The convenience of non-party witnesses is of primary importance. *Id.*

Here, ARS argues that several of its key potential witnesses all work and reside in Tennessee, including: (1) Neal Zamore, Senior Vice President and Chief Marketing Officer; (2) Brenda Downs, Vice President of Customer Relations; (3) Patti Cole, Director of Special Projects; (4) Michelle Jakubiak, Marketing Director of the East Zone; (5) Peter Simpson, Director of Digital Marketing; (6) Stacey Besinger, IT

Telecom Manager; and (7) Chris Mellon, Vice President of Marketing for the West Zone. (Mot. at 15). ARS notes that Ms. Downs is "involved in implementing ARS's marketing strategies" and Ms. Besinger has "knowledge regarding ARS's ownership of telephone numbers." (*Id.*). The other named employees and executives have various responsibilities for overseeing marketing efforts of ARS, including interactions with consumers. (*Id.*).

ARS contends that requiring all of its potentially relevant witnesses "to travel to California to participate in this litigation—for hearings, depositions, and trial—would be inconvenient to these important witnesses" and "costly and disruptive to ARS's business operations." (*Id.*; Reply at 11–12). ARS finally argues that Plaintiff "might be the only witness for his side." (Mot. at 16; Reply at 11–12).

In opposition, Plaintiff argues that "[a]ll of the potential witnesses [ARS] identifies are current ARS employees," and should presumed to be willing to testify at out-of-state actions. (Opp. at 10). Plaintiff further argues that "[i]t is not surprising that ARS, a large corporation, may have more party witnesses than Plaintiff," who may likely be the only fact witness to testify. (*Id.* at 11). Plaintiff also points out that if there are non-party witnesses, the parties may reach agreement for an alternative method of testimony, such as by video conference. (*Id.*).

As an initial matter, neither party has specifically identified a third-party witness with material information who is likely to be deposed or testify at trial. While, as noted, the Court generally focuses on the convenience of third-party witnesses in analyzing this factor, where there are no such witnesses, the Court can evaluate the convenience of party witnesses. *See, e.g.*, *Foster v. Nationwide Mut. Ins. Co.*, No. 07-CV-4928-SI, 2007 WL 4410408, *3 (N.D. Cal. Dec. 14, 2007) (noting that "neither party has identified any third-party witnesses at all" and concluding that where "the convenience of third-party witnesses is not a relevant factor, [the court] will instead focus on the convenience of the parties and witnesses affiliated with the parties"); *Mirza v. Central Asia Inst.*, No. 14-CV-1542-MMM (PJWx), 2014 WL 12663437, at *8 (C.D. Cal. May 27, 2014) (same).

At the hearing, Plaintiff noted that ARS has 14 locations in California, suggesting that it should not be difficult for ARS to litigate in this District. But there is no indication that the witnesses expected to be deposed and testify at trial work in those 14 locations. Moreover, when the convenience of the party witnesses is considered, it is clear that Tennessee is the more convenient forum. *See, e.g.*, *Skyriver Tech. Solutions, LCC v. OCLC Online Comp. Lib. Cntr., Inc.*, No. 10-CV-3305-JSW, 2010 WL 4366127, at *3 (N.D. Cal. Oct. 28, 2010) ("To the minimal extent that the convenience of party witnesses is relevant, this factor favors transfer.").

At the hearing, Plaintiff also argued that putative class actions, such as this action, rarely proceed to trial so the convenience of the party witnesses should be diminished. The Court is not persuaded because the transfer analysis does not create an exception for likelihood of trial or settlement. Instead, the transfer analysis simply considers the relative convenience of the witnesses. *See* Virginia A. Phillips & Karen L. Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California and Ninth Circuit Editions*, § 4:733 (updated Apr. 2019) ("The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relation to the issues in the case. . . . [W]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.") (citations omitted).

Moreover, other district courts have frequently found it is ***more*** convenient and preferable for witnesses to testify in person at depositions and trial. *See, e.g.*, *Stock*, 2016 WL 5867436, at *4 ("[A]lthough Plaintiffs claim that their counsel could travel to New York to take depositions, and then use deposition testimony at trial in this Court, it would be certainly more convenient if the witnesses could testify in person where they reside."); *Cambridge Filter Corp. v. Int'l Filter Co., Inc.*, 548 F. Supp. 1308, 1311 (D. Nev. 1982) ("[D]epositions are a poor substitute for live testimony . . . . [A]vailability of compulsory process to compel the attendance of unwilling witnesses is an important factor.").

Accordingly, this factor weighs in favor of transfer.

*State that is most familiar with the governing law.* ARS argues that "[d]istrict courts in California and Tennessee are equally familiar with TCPA claims." (Mot. at 18). In response, Plaintiff argues that while "the Western District of Tennessee has no greater familiarity with or interest in adjudicating the class claims than this Court," this District has "far more experience with the TCPA." (Opp. at 12). According to Plaintiff, this District "has the advantage of looking to the large body of case law concerning the [TCPA]" and therefore is most familiar with the governing law. (*Id.*).

The Court is not persuaded by Plaintiff's contention and has no reason to question the ability of the United States District Court for the Western District of Tennessee to correctly apply the law governing the TCPA.

Accordingly, this factor is neutral.

*Costs of litigation.* "The relative ability of litigants to bear the expenses of trial in a particular forum is a factor to be considered in ruling on a motion to transfer." *Toy v. General Elec. Co.*, No. 95-CV-20060-RPA, 1995 WL 396848, at *3 (N.D. Cal. June 27, 1995).

ARS argues that "it is likely that the discovery burdens in this case will fall more heavily on ARS, given that Plaintiff's allegations focus on ARS's alleged conduct in connection with ARS's marketing program." (Mot. at 18; *see* Reply at 14). Because many, if not all, of ARS's key witnesses reside in Tennessee, as noted above, and important document repositories are located there, ARS contends that transferring this action to the Western District of Tennessee would greatly reduce the overall costs of litigation. (Mot. at 18; *see* Reply at 14).

In response, Plaintiff points out that ARS "has not provided any support for the contention that litigating Plaintiff's claims in this [D]istrict will result in higher litigation costs." (Opp. at 13). The Court is not convinced by Plaintiff's argument.

For the reasons stated in connection with the convenience of the witnesses factor, the Court concludes that there is a possibility of achieving greater judicial economy and lower overall litigation costs if the case were to transfer to Tennessee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 19-1460-MWF (SSx) | Date: July 18, 2019 |
| Title: Daniel Kissick v. American Residential Services, LLC | |

*See Lodestar Anstalt v. Bacardi & Co. Ltd.*, No. 16-CV-6411-CAS (FFMx), 2017 WL 1434265, at *5 (C.D. Cal. Apr. 21, 2017) (transferring action to Florida, in part, because "litigation costs are reduced when venue is located near the most witnesses expected to testify").

Accordingly, this factor weighs in favor of transfer.

***Ease of access to sources of proof.*** Although the physical location of documents no longer carries much weight in the transfer analysis given that technology has made it easier for documents to be transferred to different locations, ease of access to sources of proof is still a relevant factor to consider. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009).

For many of the reasons already discussed, such as convenience of the fact witnesses and the location of document repositories, the Court concludes that access to sources of proof is more readily available in Tennessee. But the Court also does not place significant weight on this factor in the transfer analysis because of the relative ease of access to electronically stored documents.

Accordingly, this factor marginally weighs in favor of transfer.

In sum, the Court accords minimal weight to Plaintiff's choice of forum and concludes that all of the remaining *Jones* factors are either neutral or weigh in favor of transfer.

## IV. CONCLUSION

The Motion is **GRANTED** *in part* to the extent it seeks to transfer the action to the Western District of Tennessee and is otherwise **DENIED** *without prejudice*. Specifically, this Court is not ruling on the merits of the Rule 12(b)(6) motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-1460-MWF (SSx)          **Date:** July 18, 2019
Title:     Daniel Kissick v. American Residential Services, LLC

    The Clerk of the Court is **ORDERED** to transfer this action to the United States District Court for the Western District of Tennessee.

    IT IS SO ORDERED.